## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| **JENNIFER A. STEWART and** | : | |
| **CHERIE L. CRUZ,** | : | |
| **Plaintiffs** | : | |
| **v.** | : | **C.A. No. 22-** |
| | : | |
| **CITY OF PAWTUCKET,** | : | **Jury Trial Demanded** |
| by and through its Treasurer, | : | |
| **Christopher Rosa, alias, KENNETH R.** | : | |
| **MCGILL, alias,** in his individual and | : | |
| Official capacities as the Registrar of the | : | |
| Board of Canvassers of the City of | : | |
| Pawtucket, and **JOHN HANLEY, alias** in | : | |
| his individual and official capacities as the | : | |
| Director of Zoning for the City of | : | |
| Pawtucket, | : | |
| **Defendants** | : | |

## COMPLAINT

### I.      Introductory Statement

This action is brought by the Plaintiffs Jennifer A. Stewart and Cherie L. Cruz (collectively "Plaintiffs") seeking declaratory and injunctive relief for acts and/or omissions of Defendants in violation of Plaintiffs' rights to freedom of speech guaranteed under the First and Fourteenth Amendments to the United States Constitution, actionable pursuant to 42 U.S.C. § 1983, and under Article 1, § 21 of the Rhode Island Constitution, directly actionable under *Jones v. State of Rhode Island*, 724 F. Supp. 25, 34-36 (D.R.I. 1989).

### II.      Parties

2.      Plaintiff Jennifer A. Stewart ("Plaintiff Stewart") is a resident of the City of Pawtucket, County of Providence, State of Rhode Island.

3.      Plaintiff Cherie L. Cruz ("Plaintiff Cruz") is a resident of the City of Pawtucket, County of Providence, State of Rhode Island.

4.      Defendant City of Pawtucket ("Defendant City" or "City") is a duly authorized and organized municipality under the laws of the State of Rhode Island and is sued by and through its Treasurer, Christopher Rosa, alias, the official designated by state law, R.I. Gen. Laws § 45-15-5, to be named in a suit for relief against the City.

5.      Defendant Kenneth R. McGill, alias is sued in his individual and official capacities as the Registrar of the Board of Canvassers of the City.

6.      Defendant John Hanley, alias is sued in his individual and official capacities as the Director of Zoning for the City.

### III.    Jurisdiction

5.      This Court has jurisdiction under 28 U.S.C. §§ 1331, 1343, 1367, 2201 and 2202.

### IV.    Venue

7.      Venue is proper in this Court insofar as all of the Defendants reside or may be found in the District of Rhode Island in compliance with the requirements set forth in 28 U.S.C. § 1391.

### V.    Materials Facts

#### A.    Background of Defendant City's Unconstitutional Sign Ordinance

8.      Defendant City has long maintained an unconstitutional ordinance related to the posting of political signs.

9.      §410-81 *et. seq.* of the Pawtucket Municipal code ("Sign Ordinance"), regulating signs in the City, contains durational limits on the posting of signs which are facially unconstitutional, particularly when applied to signs engaging in political and/or religious speech, which are afforded the most robust protection under the First and Fourteenth Amendments to the United States Constitution and under Article 1, § 21 of the Rhode Island Constitution.

10.      §410-83 of the Sign Ordinance ("§410-83") allows for signs without permits, including a wide variety of "governmental" signs defined as: "Signs *of every kind and nature*

erected by or on behalf of any federal, state or local government agency, including official traffic

control or informational signs, hazard warning signs, City-sponsored outdoor murals, legal notices,

railroad crossing signs or other similar signs required by law." Defendant City of Pawtucket Sign

Ordinance attached and incorporated herein by reference as Exhibit A. (Emphasis added).

      11.    While "governmental" speech posted on signs is totally unfettered, other speech via

sign, including political speech, is restricted under §410-83 to:

> B.    Signage that does not exceed one square foot in area, is nonilluminated and is limited to a total area of two square feet per structure.
> C.    Signs that cannot be seen from the public right-of-way.
> D.    Temporary signs. The following signs, whether fixed or portable, are permitted in all zones.
>> (1) Signs for events; provided, however, that no such temporary sign may be erected for a period of more than 45 consecutive days in any year nor more than 30 days prior to the event, plus the duration of the event, with a total of 60 cumulative days throughout the year.
>>> (a) Within all residential and riverfront zones, such signs shall not exceed a total area of 12 square feet and shall be set back a minimum of six feet from any property line.
>>> (b) Within all commercial zones, such signs shall not exceed a total area of 32 square feet and shall be set back a minimum of 10 feet from any property line.
>>> (c) Within all manufacturing zones, such signs shall not exceed a total area of 32 square feet and shall be set back a minimum of 10 feet from any
>>> property line.

      12.    Accordingly, §410-83 allows only two types of signs on a residential homeowner's

private property, a) non-illuminated signs of not more than one square foot in area; and, b)

temporary signs which are subject to placement, ***extended durational limits, and size limitations***

***of no more than twelve (12) square feet.***

      13.    Specifically, temporary "[s]igns for events [may be erected without a permit];

provided, however, that no such temporary sign may be erected for a period of more than 45

consecutive days in any year nor more than 30 days prior to the event, plus the duration of the

event, with a total of 60 cumulative days throughout the year."

14.     Defendant City applies this ordinance to both political and religious signs, restricting their display to the durational and size limits outlined above.

15.     Defendant City has been on notice of the illegal and unconstitutional nature of §410-83 since at least 2018 when, on September 14th, Steven Brown, Executive Director of the American Civil Liberties Union of Rhode Island ("RIACLU"), sent a letter to then Pawtucket Zoning Department Director Sue Mara, copied to the then Pawtucket City Council, Mayor, City Solicitor, and City Clerk.  2018 RIACLU Letter to Defendant City ("2018 RIACLU Letter"), a copy of which is attached hereto and incorporated herein by reference as Exhibit B.

16.     That letter outlined the unconstitutional nature of §410-83 and explained some of its many constitutional failings in depth, including the size and durational limits on political signs. *See* 2018 Exhibit B, RIACLU Letter.

17.     Despite this letter and clear legal authority cited therein, Defendant City has continued to enforce its illegal Sign Ordinance through to the present.

18.     For example, the Candidates Booklet produced by Defendant City's Board of Canvassers and Registrations, which was provided to the Plaintiffs and, on information and belief, is provided to all individuals running for elected positions who reside in the City, explicitly informs political candidates that "the city of Pawtucket has a strict ordinance on political signage . . . any candidate campaign that does not adhere to this ordinance can be cited and brought to municipal court."  Candidate Booklet ("Booklet") at 8, attached and incorporated herein by reference as Exhibit C.

19.     The Booklet then goes on to cite Defendant City Ordinance §410-83 with slightly altered language to specifically identify elections: "Signs for events such as elections: No such temporary sign may be erected for a period of more than 45 consecutive days in any year nor more

than 30 days prior to the event plus the duration of the event, with a total of 60 cumulative days throughout the year." *Id.*

**B.    Defendant City's Enforcement of the Unconstitutional Sign Ordinance Against Plaintiffs and Their Supporters**

20.    At all relevant times, Plaintiffs were and are running for office in elections conducted in the Defendant City.

21.    Plaintiff Stewart was and is running for State of Rhode Island Representative in District 59.

22.    Plaintiff Cruz was and is running for State of Rhode Island Representative in District 58.

23.    Plaintiff Stewart is contesting a primary election against an incumbent who has the advantage of name recognition that comes with incumbency.

24.    Further, both Plaintiffs lack significant name recognition, their campaigns are not well funded, and that as unendorsed challengers, they rely heavily on inexpensive campaign lawn signs to generate name recognition and communicate their candidacies to potential voters and other residents of Defendant City.

*Plaintiff Stewart*

25.    On or about May 5, 2022, Plaintiff Stewart officially announced her candidacy for the 59th District, Rhode Island House of Representatives and began campaigning and fundraising.

26.    On or about June 13, 2022, Plaintiff Stewart hired Marco Carrasco as the field director for her campaign.

27.    On or about June 26, 2022, Plaintiff Stewart began canvassing voters in the district.

28.    On or about June 27, 2022, Plaintiff Stewart filed her Declaration of Candidacy at the Pawtucket Board of Canvassers.

29.     On or about July 1, 2022, Plaintiff Stewart received her first order of 150 (one hundred and fifty) campaign yard signs.

30.     On or about July 2, 2022, Plaintiff Stewart put up her first yard sign at 41 Patt Street, where she lives, and began distributing campaign signs to supporters, which she continued to do through July 5, 2022.

31.     On or about July 4, 2022, Plaintiff received a phone call from Jean Phillippe Barros, her opponent in the primary election, but missed the call and Mr. Barros did not leave a message.

32.     By on or about July 5, 2022, by the early afternoon, Plaintiff Stewart had put about thirty-two (32) yard signs at supporters' homes.

33.     Also, on or about July 5, 2022, Plaintiff Stewart received a call from Defendant McGill, Registrar of the Defendant City Board of Canvassers, who was in charge of approving signatures for prospective candidates and thus authorizing their placement on the ballot.

34.     Defendant McGill left Plaintiff Stewart a voicemail referring her to the candidates packet she had received and telling her that she could not place signs on lawns until thirty (30) days before the primary election, which he said was August 14, 2022.  Transcript of Voicemail from Defendant Kenneth McGill ("Voicemail"), attached and incorporated herein by reference as Exhibit D.

35.     Defendant McGill went on to explain that if signs were not taken down, he would refer the matter to Defendant City's Zoning Authority who could issue fines to the individuals who had signs in their yards before the date he identified.  *Id.*

36.     Plaintiff Stewart called Defendant McGill back to clarify the situation and Defendant McGill reiterated what he said on the voicemail, told Plaintiff Stewart that she and her supporters had to take down their signs, and told her that both her campaign and her supporters who put up signs could be fined if the signs remained up.

37.     Plaintiff Stewart was then forced to drive all around Pawtucket taking down the signs that she had distributed to avoid her supporters or herself being fined.

### *Plaintiff Cruz*

38.     Plaintiff Cruz had a similar experience with Defendant City and its unconstitutional Sign Ordinance.

39.     On or about June 27, 2022, Plaintiff Cruz officially declared her candidacy for the 58th District, Rhode Island House of Representatives, after announcing the same on or about May. 11, 2022.

40.     Plaintiff Cruz then began campaigning and fundraising and ordered yard signs for supporters in her community, who are homeowners and wanted to display her signs on their property in support of her run for office.

41.     Plaintiff Cruz began her campaign going door to door and as she spoke with people, many offered to support her campaign by displaying yard signs on their front lawns supporting Plaintiff Cruz's campaign.

42.     Plaintiff Cruz took down the information and promised to let her supporters know when the signs she had ordered were ready and that she would bring them to their homes when she received them.

43.     On or about July 8, 2022, Plaintiff Cruz's yard signs were ready to be distributed.

44.     While Plaintiff Cruz was speaking to people and preparing to distribute her signs, she was told by some community members that signs could not be displayed until thirty (30) days before an election according to §410-83 of the Sign Ordinance.

45.     Plaintiff Cruz researched §410-83 and discovered that Defendant City did indeed ban political signs except for short periods of time before elections.

46.     Plaintiff Cruz, incredulous that such a rule could be legal, eventually reached out to the Defendant City Zoning Office to confirm whether §410-83 as interpreted and applied by the City banned the erection of political signs except for short periods of time before and after elections.

47.     Along with researching §410-83, other Rhode Island sign ordinances, and legal standards related to such rules Plaintiff was also waiting for name to be approved for inclusion on the ballot to begin putting up her campaign lawn signs.

48.     On or about July 20, 2022, when Plaintiff Cruz believed her inclusion would soon be approved, she left a message for Defendant John Hanley, Director of Zoning for Defendant City.

49.     Plaintiff Cruz received a call back from Defendant Hanley's secretary who said she believed that the thirty (30) day rule referenced by Plaintiff Cruz was correct.

50.     Plaintiff Cruz then, at the direction of Defendant Hanley's secretary, contacted and confirmed with the Defendant City Clerk's office and with Defendant City's Board of Canvassers that she could not erect lawn signs until thirty (30) days before an election and that she and her supporters faced fines if they put up signs before then.

51.     Plaintiff Cruz, who has spent a decade on the Board of the RIACLU, did not believe such a rule on political signs was constitutional and sought assistance from them.

### *Issues with Determination of Thirty Days Before Event as Applied to this Election*

52.     Plaintiffs were both approved for inclusion on the ballot on or about July 22, 2022.

53.     Defendants' thirty (30) days before the election time limit ignores the fact that mail-in voting and early in-person voting, as well as deadlines to request such and to register to vote or change party affiliation, all key dates in the election at issue, are all well before the date of the

primarily election date cited by Defendant City of September 13, 2022, as the day from which to count the thirty (30) days from the start of the event as cited by ordinance.

54.     Indeed, at the time of this filing the deadlines to register to vote and to change party registration, essential dates in a primary election, are barely two (2) weeks away and other important election dates are fast approaching.

55.     Similarly, early in person voting starts on August 24, 2022, which would mean that the Plaintiffs' signs could be posted *no earlier than a mere 10 days prior to the primary election, according to the Board of Canvasser's interpretation of the Sign Ordinance*.

### C.     Content-Based Regulation of Speech

56.     §410-81 *et. seq.* of the Defendant City Ordinances regulates signs and outlines the permitting process for signs in Defendant City.

57.     §410-83 of that ordinance allows for some signs to be posted without permits, size, or durational restrictions, specifically a wide variety of "governmental" signs "of every kind and nature erected by or on behalf of any federal, state or local government agency."

58.     §410-83 thus subjects certain types of speech, including political speech, to more onerous restrictions than "governmental" speech and, as such, regulates political speech in a more restrictive manner than other types of speech.

59.     Specifically, §410-83 allows "governmental" signs to be posted without permits or any regulation, but subjects other speech posted on signs, including political speech, to highly restrictive durational and size limitations.

### D.     The Importance of Political Signs

60.     The Supreme Court has held that "the First Amendment has its fullest and most urgent application to speech uttered during a campaign for political office.

61.     Communication by signs and posters is virtually pure speech.

62.     The Supreme Court has further held that residential signs are a form of unique expression entitled to the highest degree of protection under the Free Speech Clause of the First Amendment.

63.     Displaying a sign from one's own residence often carries a message quite distinct from placing the same sign someplace else or conveying the same text or picture by other means, insofar as, by their location, such signs can provide information about the identity of the "speaker."

64.     A person who puts up a sign at his or her residence often intends to reach neighbors, an audience that could not be reached nearly as well by other means.

65.     Political signs are an unusually cheap and convenient form of communication that may have no practical substitute, by which people of modest means may become involved in political campaigns and show their support for a candidate or cause.

### D.     Outright Bar on Extended Durational Limits on Political Signs

66.     Even where durational restrictions on political signs are content neutral extended durational bans are facially unconstitutional.

67.     As here, where durational limits effectively outright ban political signs for all but a relatively short period of time immediately before political elections such durational limits operate as *de-facto* bans on political speech and are unconstitutional.

68.     Indeed, there is an inherent lack of clarity as to when a pre-election period actually begins; given the ongoing political activity surrounding most modern elections, that period often begins as early as the conclusion of the previous election.

69.     Accordingly, where an individual wishes to promote a candidate, the candidate's cause, or both by posting a sign on residential property several months or even years before the next political election, this is constitutionally protected free speech.

**E.**     **Sign Ordinance is Vague and Confusing and Permits Arbitrary Enforcement**

70.     The §410-83 provision that prohibits the posting of political signs for a period of no more than 45 consecutive days in any year nor more than 30 days prior to the event, plus the duration of the event, with a total of 60 cumulative days throughout the year, is vague and confusing.

71.     In particular, the measuring point for application of these restrictions, the date of the "event," is vague as it applies to an election where the date of regular voting is on September 13, 2014, but early in person voting starts on August 24, 2022, mail in ballots may be submitted at any time after they have been printed and distributed, and other key election dates are even earlier.

72.     Further, in the Candidates Booklet provided by Defendant the Important Dates Section does not list the date when signs may begin to be posted adding to the potential for confusion and further exemplifying the vagueness of §410-83. *See* Exhibit C, Candidates Booklet at 4.

73.     By failing to provide clear notice as to what is and is not permitted, members of the public are deterred from engaging in political speech by the potential of prosecution and the imposition of monetary penalties under the Sign Ordinance, while at the same time this same vagueness permits arbitrary enforcement depending on the enforcer's interpretation of the date of the "event."

74.     An enactment, such as the Sign Ordinance, is impermissibly vague, where, as here, it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits or authorizes or even encourages arbitrary and discriminatory enforcement.

75.     To prevent arbitrary and discriminatory enforcement, laws must provide explicit standards for those who apply them.

76.    A statute that allows arbitrary application is "inherently inconsistent with a valid time, place, and manner regulation because such discretion has the potential for becoming a means of suppressing a particular point of view."

### E.    First Amendment Facial Challenge

#### *Content-Based Discrimination*

77.    Sign Ordinance §410-83, which grants more favorable treatment to "governmental" speech than other speech, including political speech, regulates the erection of signs based on content.

78.    A restriction on speech is content-based when the message conveyed determines whether the speech is subject to restriction.

79.    Content based restrictions on free speech "must be subjected to the most exacting scrutiny."

80.    Content discrimination in the regulation of the speech of private citizens on private property is presumptively impermissible.

81.    To survive strict scrutiny, a content-based restriction must serve a compelling governmental interest and must be narrowly drawn to achieve that purpose, such that it is the "least restrictive" alternative available.

82.    Governmental limitations on speech "rarely survive strict scrutiny."

83.    Defendant City's presumed interests in traffic safety, aesthetics, and/or property values, while not insignificant, have never been held to be compelling, and any such purported interest is belied by the fact that §410-83 permits "governmental" signs without regulation as to duration, size, or illumination.

84.     Among other things, the durational limit on political signs such as that contained in Sign Ordinance has been almost uniformly declared unconstitutional by the courts, including political sign challenges brought in the District of Rhode Island.

85.     The First Amendment's hostility to content-based regulation of speech extends not only to restrictions on particular viewpoints, but also to prohibition of public discussion of an entire topic.

86.     As a general matter, "the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content."

87.     "To allow a government the choice of permissible subjects for public debate would be to allow that government control over the search for political truth."

88.     Any restriction on expressive activity because of its content undercuts the "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open."

### F.     Intentional Conduct

89.     At all relevant times, Defendants acted intentionally, willfully, maliciously, and/or with reckless or callous indifference to Plaintiff's clearly established constitutional rights. Furthermore, at all relevant times, Defendants knew or should have known that their conduct would cause or contribute to the deprivation of Plaintiff's clearly established civil rights.

90.     At all relevant times, Defendants were motivated by malice, wantonness and/or willfulness of such an extreme nature as to amount to criminality.

### G.     Restrictions on Plaintiff's Free Speech

91.     Plaintiffs' rights to freedom of expression was and continues to be substantially damaged and curtailed as a result of the conduct of Defendants, specifically the impairment of

their ability to communicate their political candidates to potential voters and members of the public generally.

92.     Plaintiffs would like to and intend to erect and display lawn signs throughout Defendant City on the lawns of their supporters promoting and advertising their candidacies.

93.     Nevertheless, Plaintiffs are reluctant to expend time to erect and display their signs on the lawns of supporters within the City, insofar as they and their supporters face potential prosecution and the imposition of monetary penalties and the requirement to take down signs if they do so.

### H.     Irreparable Harm and Damages

94.     The Defendants' foregoing acts and/or omissions constitute a violation of the Plaintiffs' rights to freedom of speech protected under the First and Fourteenth Amendments to the United States Constitution and Article 1, § 21 of the Rhode Island Constitution.

95.     The Defendants' actions have placed Plaintiffs in the position of either refraining from constitutionally protected conduct or facing prosecution and the potential imposition of substantial monetary fines against them and their supporters.

96.     Plaintiffs lack significant name recognition, their campaigns are not well funded, and that as unendorsed challengers, they are particularly disadvantaged and harmed each day that they and their supporters are deprived of communicating their candidacy and message through the use of inexpensive campaign lawn signs.

97.     That, as a direct and proximate result of the Defendants' acts and/or omissions, including, but not limited to, those described herein, the Plaintiffs have suffered and will continue to suffer deprivation of their First Amendment freedom of expression rights and have thereby sustained and will continue to sustain irreparable harm.

98.     That, as a direct and proximate result of the Defendants' acts and/or omissions, including, but not limited to, those described herein, the Plaintiffs have suffered and will continue to suffer mental anguish, pain and suffering, impairment of their freedom of expression rights and incur expenses for legal services and suffer other great damage.

## VI.     Claims for Relief

99.     Plaintiffs incorporate in the counts below the allegations contained in ¶¶1 through 98 above.

## COUNT ONE
### *Impairment of Freedom of Speech in Violation of 42 U.S.C. § 1983*

100.    Defendants, acting under the color of state law, by their acts and/or omissions, including but not limited to those described herein, have deprived Plaintiffs of and placed unlawful restrictions on their freedom of expression in violation of Plaintiffs' right to freedom of speech, causing Plaintiffs to suffer harm as aforesaid, and have thereby deprived Plaintiffs of rights secured under the First and Fourteenth Amendments to the United States Constitution, actionable pursuant to 42 U.S.C. § 1983.

## COUNT TWO
### *Impairment of Freedom of Speech in Violation of Article 1, § 21 of the Rhode Island Constitution*

101.    Defendants, acting under the color of state law, by their acts and/or omissions, including but not limited to those described herein, have deprived Plaintiffs of and placed unlawful restrictions on their freedom of expression in violation of Plaintiffs' right to freedom of speech, causing Plaintiffs to suffer harm as aforesaid, and have thereby deprived Plaintiffs of rights secured under Article 1, § 21 of the Rhode Island Constitution.

## VII.     Prayers for Relief

**WHEREFORE,** Plaintiffs pray that this Court grant the following relief:

1.  A temporary restraining order and preliminary and permanent injunctions restraining and enjoining Defendants from interfering with the exercise of the Plaintiffs' right to freedom of speech guaranteed by the First and Fourteenth Amendments to the United States Constitution and Article 1, § 21 of the Rhode Island Constitution.

2.  A declaratory judgment that the Defendants, in the manner described herein, have violated the First and Fourteenth Amendments to the United States Constitution and Article 1, § 21 of the Rhode Island Constitution by placing impermissible restrictions on Plaintiffs' right to freedom of speech.

3.  An award of compensatory damages.

4.  An award of punitive damages.

5.  An award of reasonable attorney's fees and costs of litigation to Plaintiff pursuant to 42 U.S.C. § 1988.

6.  Such other and further relief as this Court deems just and proper.

## VIII.  Demand for Jury Trial

Plaintiffs hereby demand a trial by jury on all counts so triable.

## IX.   Designation of Trial Counsel

Plaintiffs hereby designates Richard A. Sinapi, Esquire, as trial counsel.

Plaintiffs,
By their attorneys,

Date:  **July 26, 2022**        /s/ **Richard A. Sinapi**
                               **Richard A. Sinapi, Esq.** (#2977)
                               **American Civil Liberties Union Foundation of**
                               **Rhode Island**
                               Sinapi Law Associates, Ltd.
                               2374 Post Road, Suite 201
                               Warwick, RI 02886
                               Phone:  (401) 739-9690
                               FAX:  (401) 739-9040
                               Email: ras@sinapilaw.com

## <u>VERIFICATION OF COMPLAINT</u>

Now comes the Plaintiff, **Jennifer A. Stewart**, being duly sworn, and does hereby depose and say as follows:

1. That I am one of the Plaintiffs in the within matter.

2. That I have read the above Complaint and acknowledge the factual allegations alleged therein as they relate to me to be true and accurate to the best of my knowledge, information, recollection, and belief.

3. That I have made this **Verification of Complaint** in support of my prayers therein for judgment and relief against the Defendants.

_____
**Jennifer A. Stewart**

Subscribed and sworn to before me in **Warwick** on this **26** day of **July, 2022**.

_____
(name) _Richard A. Sinapi_
**NOTARY PUBLIC**
**My Commission Expires:** _6/22/25_

```
RICHARD A. SINAPI
Notary Public-State of Rhode Island
My Commission Expires
June 22, 2025
```

Now comes the Plaintiff, **Cherie L. Cruz**, being duly sworn, and does hereby depose and say as follows:

1.  That I am one of the Plaintiffs in the within matter.

2.  That I have read the above Complaint and acknowledge the factual allegations alleged therein as they relate to me to be true and accurate to the best of my knowledge, information, recollection, and belief.

3.  That I have made this **Verification of Complaint** in support of my prayers therein for judgment and relief against the Defendants.

_Cherie L. Cruz_
**Cherie L. Cruz**

Subscribed and sworn to before me in **Warwick** on this **26** day of **July, 2022**.

_Lori A. Beagan_
(name) Lori A. Beagan
**NOTARY PUBLIC**
**My Commission Expires:** 1/19/2026

LORI A. BEAGAN
Notary Public-State of Rhode Island
My Commission Expires
January 19, 2026